## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KATHY BAUER, on behalf of herself and all others similarly situated, <br><br>                 Plaintiff, <br><br> vs. <br><br> STATE FARM LIFE INSURANCE COMPANY, <br><br>                 Defendant. | Civil Action No. <br><br> **COMPLAINT - CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Kathy Bauer, ("Plaintiff"), on behalf of herself and all others similarly situated, brings this Complaint against Defendant State Farm Life Insurance Company ("State Farm" or "Defendant"), and states as follows:

## NATURE OF THE ACTION

1.   This is a class action brought on behalf of Plaintiff and similarly situated holders of universal life insurance policies issued by State Farm and its predecessors in interest issued using FORM-94030 (the "Subject Policies").

2.   Plaintiff seeks to represent a class of Georgia consumers who own or owned a Subject Policy and who have been forced to pay unlawful and excessive cost of insurance ("COI") charges to State Farm or its predecessors in interest (the "Class"). Defendant has caused material harm to Plaintiff and the proposed Class by

improperly draining monies they have accumulated in the Subject Policies.

3.   Plaintiff's claims and those af the proposed Class are exclusively supported by the plain language of the Subject Policies and are not derived from any alleged conversations had, or documents reviewed, at the time of sale. Indeed, the Subject Policies are form contracts, and Plaintiff and the Class did not—and were not able to—negotiate any of the terms in these contracts.

4.   The Subject Policies "unbundle" the various charges and credits charged to the policy owner; that is, the monthly deductions are broken down into an array of discrete charges and credits.[1] State Farm is contractually bound to deduct only those charges that are explicitly identified and authorized by the terms of the Subject Policies.

5.   Despite unambiguous policy language in a fully integrated agreement, State Farm deducts monthly COI charges from the Subject Policies in excess of amounts specifically permitted by the terms of those policies. Every unauthorized dollar taken from policy owners is one less dollar that can be used to: invest through the Subject Policies; pay future premiums; increase the death benefit; use as

---

[1]   *See* Dictionary of Insurance Terms at 550 (6th ed. 2013) (defining UL policies as "coverage in which the investment features, mortality element and cost factors of a life insurance policy are separated, permitting each part to be independently analyzed"); *see also id.* at 557-58.

collateral for policy loans; or withdraw as cash.

6.    The plain language of the Subject Policies establishes that the COI charge is used to cover the insurer's mortality risk (*i.e.*, the expected probability that the insured will die in a given policy year).[2] The fact that the COI charge is intended to reflect the insurer's mortality risk (and not its profit) is also established by the fact that these policies contain a separate line item for the "Expense Charge" to be paid by the insurer to State Farm.

7.    Because COI charges are intended to compensate the insurer for mortality risk, insurers—including State Farm and its predecessors in interest—are contractually obligated to compute these charges based on their expectations of future mortality, not their desire to garner a greater profit on the Subject Policies. Thus, when mortality rates are projected to decline because life expectancy is *increasing*, insurers are required to *reduce* their COI charges. Conversely, when mortality rates are projected to go up because life expectancy is *decreasing*, insurers may increase their COI charges, subject to certain requirements and constraints (*e.g.*, the "maximum monthly cost of insurance rates").

8.    That mortality expectations have improved significantly over the past

---

[2]    For that reason, it is commonly referred to in the industry as the "mortality charge" or the "pure cost of protection."

several decades is now well-documented, and this trend is widely projected by the life insurance industry to continue. Notwithstanding the substantially improved mortality expectations, State Farm breached its contracts with Plaintiff and the Class and abused its contractual discretion by not reducing its COI charges.

9.   Policyholders' comfort with this arrangement is due to their trust—and the insurer's contractual commitment—that the insurer will dutifully decrease COI charges to reflect improved life expectancy (*i.e.*, reduced projected mortality).

10. State Farm, however, has been abusing this trust and breaching its contractual commitment by (a) basing its COI charges on non-permissible considerations, such as profit and/or lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates. These breaches allowed State Farm to convert COI charges from a cost-recovery mechanism into a profit vehicle. By retaining the difference between its projected mortality expenses and the COI charges incurred by Plaintiff and the Class, State Farm has earned tens—if not hundreds—of millions of dollars in extra profit.

## THE PARTIES

11. Plaintiff Kathy Bauer is a citizen and resident of Vidalia, Georgia. Plaintiff owns a Subject Policy with State Farm (Policy No. LF-1342-0563) that became effective on February 10, 1994 (the "Bauer Policy"). The Bauer Policy was

issued while Plaintiff resided in Georgia. Kathy Bauer is the "owner" of the Bauer Policy, State Farm was and is the effective and liable insurer of the Bauer Policy, and to Plaintiff's knowledge, State Farm has never reduced the COI charges it deducts from this policy.

12. Defendant State Farm is a life insurance company organized and existing under the laws of the State of Illinois, and maintains its principal place of business in Bloomington, Illinois. Defendant is authorized to transact business within the state of Georgia and maintains a national operations center located in Atlanta, Georgia.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiff) and one defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

14. This Court has personal jurisdiction over State Farm because it is licensed to sell insurance in this State and because it sold the Subject Policies to residents of this State, including to Plaintiff.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

Defendant resides in this District because it maintains sufficient minimum contacts to establish general personal jurisdiction over Defendant in this District. Among other things, State Farm operates of one of its major office hubs located in Atlanta, Georgia. Further, Defendant has dozens, if not hundreds, of agents located in and selling its insurance throughout this District. Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

**A.    The Subject Policies**

16. State Farm issued the Subject Policies in the United States using standardized contracts notated as FORM-94030 between roughly January 1, 1994 and June 30, 2004. On information and belief, State Farm continues to accept payments on the '94 Policy from roughly 540,000 policyholders in the United States.

17. Owners of the Subject Policies were not permitted to negotiate any of the terms; the terms of the Subject Policies are not subject to individual negotiation and are materially the same across the Class. They cannot be altered by an agent's representations at the time of sale, and any endorsements, amendments, or riders must be signed by an officer to be valid.

18. State Farm has administered and currently administers all aspects of the Subject Policies. In this capacity, State Farm has collected (and continues to collect)

premiums and set, assessed, and deducted policy charges, including the COI charge, on the Subject Policies.

19. Unlike standard term life insurance policies, the Subject Policies provide policy holders an investment, savings, or interest-bearing component. The Subject Policies refer to this component as "Cash Value," "Account Value," or something similar.[3]

20. Under the terms of the Subject Policies, the policy owners make premium payments to State Farm, and State Farm deducts the monthly charges authorized by the policies. The remaining amount is then deposited into the Cash Value, which consists of an interest-bearing account that accumulates over time.

21. The funds in the Cash Value belong to the policy owner. State Farm holds these funds in trust for the policy owners and may only access or withdraw these funds as expressly authorized by the Subject Policies.

22. The Subject Policies, including the Plaintiff's Policy, authorize State Farm to take a "Monthly Deduction" from the Cash Value of each policy each month. The Subject Policies expressly define the Monthly Deduction as follows:

**Monthly Deduction.** This deduction is made each month, whether or

---

[3]    This Complaint refers to this component as the "Cash Value," but regardless of the specific terminology used, the purpose of this component is the same in each of the Subject Policies.

not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes:
> (1)    the cost of insurance,
> (2)    the monthly charges for any riders, and
> (3)    the monthly expense charge.

23. The Subject Policies, including Plaintiff's Policy, set the "monthly expense charge" at a specific dollar amount. In the case of the Plaintiff's Policy, the expense charge is set at $5.00.

24. The Subject Policies, including Plaintiff's Policy, also expressly define how the COI charge is determined and calculated:

> **Cost of Insurance.** This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount.
>
> The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:
> > (1)    is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
> > (2)    is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.
>
> Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

25. The Subject Policies, including Plaintiff's Policy, explicitly establish the factors State Farm may use to determine "Monthly Cost of Insurance Rates" (the

"COI Rates"), which are in turn used to calculate the COI charge (as set forth above) that is deducted from the Cash Value each month:

> **Monthly Cost of Insurance Rates.** These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

26. Thus, under the explicit terms of the Subject Policies, State Farm is authorized only to use the Insured's age, sex, applicable rate class, and projected changes in mortality when determining the Subject Policies' COI Rates.

27. Indeed, State Farm has previously admitted that a rate "based on" factors explicitly identified in the Subject Policies must be determined using only those identified factors. For example, in *Alleman v. State Farm Life Insurance Co.*, 334 Fed. App'x 470, 472 (3rd Cir. 2009), the court affirmed summary judgment in State Farm's favor and rejected the plaintiffs' argument that a provision in a life insurance policy stating that a charge would be "based on the Insured's age last birthday and sex" should be read to include other undisclosed factors because, "[b]y the plain language of these policies, it is clear that the insureds' age and sex are the only

mortality factors relevant to that rate . . . ."

28. Recently, the United States District Court for the Western District of Missouri, reviewing the language in a later issued policy that is identical to the language at issue here, determined that "no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance. While an insurance company would be expected to make a profit, the terms of the insurance policy at issue are so dense, *a lay person would not understand that State Farm expected to derive profit from the COI*." *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170, 2018 WL 1747336, at *4 (W.D. Mo. Apr. 10, 2018) ("*Vogt*") (emphasis added). The Eighth Circuit affirmed. *See Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 761 (8th Cir. 2020) (affirming jury verdict returned in class's favor and noting that trial court had established liability as a matter of law).

29. As the above establishes, the "Expense Charge" and the "charges for any riders" are the only means by which State Farm was contractually permitted to earn a profit margin on the Subject Policies; the cost of insurance charge was only intended to reimburse State Farm for its mortality risk. Nonetheless, State Farm has made a practice of charging such non-mortality factors as profit in the COI.

**B.**  **State Farm, in Breach of its Contracts with Plaintiff and the Class, Considered Impermissible Factors in Setting the COI Rates**

30. Age, sex, and rate class are factors commonly used within the life

insurance industry to determine the mortality expectations of an insured or group or class of insureds.

31. An insured would reasonably read age, sex, and rate class, in combination with the disclosure that rates can only be adjusted for "projected changes in mortality," and understand that only mortality expectations are used to determine COI Rates.

32. By specifically identifying age, sex, and rate class as the defining components of the COI Rate, Plaintiff and the Class, on the one hand, and State Farm, on the other, agreed that mortality expectations are what determines the COI Rates under the Subject Policies. This is further confirmed where the Subject Policies states that "[s]uch rates can be adjusted for projected changes in mortality[.]"

33. Notwithstanding the clear terms of the Subject Policies limiting the factors State Farm may consider in determining the COI Rates, State Farm uses other factors, which are not authorized by the Subject Policies, when determining these rates, including but not limited to the following:

a.     Expense experience;

b.     Persistency and/or lapse rates;

c.     Taxes;

    d.      Profit assumptions;

    e.      Investment earnings and/or losses;

    f.      Capital and reserve requirements; and

    g.      Other unspecified factors.

34. By including these impermissible factors in the calculation of its COI Rates, State Farm knowingly caused the COI Rates to be higher than what is explicitly authorized under the terms of the Subject Policies, thereby assessing COI charges to the owner's premiums in amounts greater than those authorized in the Subject Policies. This reduced the monies deposited into the Cash Accounts (which also reduced the amount of money earning interest), causing a substantial financial injury to Plaintiff and the Class.

35. As an additional consequence of State Farm knowingly charging COI Rates higher than what was authorized by the Subject Policies, the Cash Values of some Class members were so depleted that State Farm cancelled their policies, thereby depriving them of their insurance proceeds (even after years of payment).

36. As a direct and proximate result of State Farm's breach, Plaintiff and the Class have been damaged and those damages are continuing in nature in that State Farm has deducted and will continue to deduct expenses, including without limitation, maintenance, administrative, and other expenses, from the Cash Values

of Plaintiff and the Class in amounts not authorized by the Subject Policies.

**C.**     **State Farm, in Breach of its Contracts with Plaintiff and the Class and the Implied Covenant of Good Faith and Fair Dealing, Failed to Reduce its COI Charges**

37. The above language contractually requires State Farm to reduce its COI rates when its expectations of future mortality improve.

38. As shown below, State Farm, in breach of its contracts with Plaintiff and the Class, did not do so.

39. That monthly COI rates are based on sex, age, and rate class means that State Farm was required to determine the COI rates by reference to mortality tables. Mortality tables are charts showing the rate of death (either as a percentage or as the number of deaths per thousand individuals) at a given age. There are separate mortality tables for males and females, tobacco-use, underwriting status, and duration since underwriting. Actuaries and insurers use mortality tables to calculate insurance rates and are intended to reflect expectations of future mortality.

40. Beginning at least as early as 1941, the National Association of Insurance Commissioners ("NAIC") has periodically issued a series of Commissioners Standard Ordinary ("CSO") mortality tables. These are industry standard mortality tables that are commonly used by insurers to calculate reserves and to set maximum permitted cost of insurance rates in UL policies.

41. The 1980 table issued by the NAIC was called the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table ("1980 CSO Mortality Table"). That table was the industry-standard table until 2001.

42. In 2001, at the request of the NAIC, the Society of Actuaries ("SOA") and the American Academy of Actuaries (the "Academy") produced a proposal for a new CSO Mortality Table. The accompanying report from June 2001 explained that (a) the 1980 CSO Mortality Table was still the industry-standard table and (b) expected mortality rates had improved significantly each year since the 1980 table issued. The report stated: "The current valuation standard, the 1980 CSO Table, is almost 20 years old and mortality improvements have been evident each year since it was adopted. . . . [C]urrent mortality levels . . . are considerably lower than the mortality levels underlying the 1980 CSO Table.[4] The report further explained that "[f]or most of the commonly insured ages (from about age 25 to age 75), the proposed 2001 CSO Table mortality rates are in the range of 50% to 80% of the 1980 CSO Table."

43. This means the tables are showing a substantial improvement in mortality

---

[4]     *Report of the American Academy of Actuaries' Commissioner's Standard Ordinary (CSO) Task Force*, Presented to the National Association of Insurance Commissioners' Life and Health Actuarial Task Force (LHATF), June 2001, available at http://www.actuary.org/pdf/life/cso2_june01.pdf.

in a 20-year time-period. These mortality improvements represent a substantial benefit that State Farm should have passed on to Plaintiff and the Class. The final proposed tables were adopted as the 2001 Commissioners Standard Ordinary Mortality Table ("2001 CSO Mortality Table"). The 2001 CSO Mortality Table reflected vastly improved mortality experience as compared to the 1980 CSO Mortality Table.

44. Since the 2001 CSO Mortality Table was published, the SOA and the Academy have periodically published, from surveys of life insurers, new tables showing consistent and significant mortality improvement. For example, the Academy's 2015 report observed: "The current CSO table was created in 2001 based on experience from 1990-1995 and thus, is at least 20 years old. ***Since that time, industry experience studies performed by the Society of Actuaries Individual Life Experience Committee (ILEC) have shown significant improvement in the mortality rates experienced by the industry from that underlying the 2001 CSO table development***."[5]

45. Other surveys of insurers conducted by the SOA between 2002 and 2009

---

[5]    Am. Academy of Actuaries, *Report on the 2017 CSO and 23017 CSO Preferred Structure Table Development* (Oct. 2018), https://www.soa.org/Files/Research/Exp-Study/research-2017-cso-report.pdf (emphasis added).

also show that mortality has steadily decreased since issuance of the 2001 CSO Mortality Table. For instance, the SOA published Individual Life Experience Reports for the periods 2002-2004,[6] 2005-2007,[7] 2008-2009,[8] and 2009-2013,[9] each of which showed strong rates of improvement in mortality. State Farm was one of the surveyed companies included in each of these studies.

46. The SOA also periodically publishes updated mortality tables that reflect insurers' changing experience, including (a) 1990-95 Basic Select and Ultimate Mortality Tables;[10] (b) 2001 Valuation Basic Mortality Table;[11] (c) 2008 Valuation

---

[6]   Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality under Standard Individually Underwritten Life Insurance Between 2002 and 2004 Policy Initiatives* (Dec. 2004), https://www.soa.org/resources/experience-studies/2005-2009/02-04-iindividual-life-exp-rpt/.

[7]   Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality for Standard Individually Underwritten Life Insurance Between 2005 and 2007 Policy Anniversaries* (Feb. 2010), https://www.soa.org/resources/experience-studies/2010/2005-2007-ind-life-report/.

[8]   Society of Actuaries, *2008-09 Report of the Individual Life Insurance Experience Committee* (April 2013), https://www.soa.org/experience-studies/2017/2009-13-indiv-life-ins-mort-exp/.

[9]   Society of Actuaries, *2009-2013 Individual Life Insurance Mortality Experience Report* (Oct. 2017), https://www.soa.org/experience-studies/2013/research-2008-2009-ind-life-exp/.

[10]   Society of Actuaries, *1990-95 Basic Select and Ultimate Mortality Tables for Individual Life Insurance*, https://www.soa.org/experience-studies/2000-2004/90-95-basic-select/.

[11]   Society of Actuaries, *Final Report of the Individual Life Insurance Valuation*

Basic Table;[12] and (d) 2015 Valuation Basic Table.[13] Consistent with the foregoing, these tables confirm that mortality continued to improve substantially since issuance of the Subject Policies.

47. Other surveys have also noted significant improvements in mortality expectations. In May of 2013, for instance, the reinsurance company RGA published a report sponsored by the SOA enumerating mortality rates and mortality improvements at older ages.[14] This study, which was based on a survey of insurance companies—including State Farm—showed material rates of mortality improvements. As another example, in March 2014 the actuarial firm Milliman published a report sponsored by the SOA—also based on a survey of insurance companies that included State Farm—called the "Select Period Mortality Survey,"

---

*Mortality Task Force 2001 – Valuation Basic Mortality Table [2001 VBT]* (April 2005), https://www.soa.org/experience-studies/2005-2009/final-report-life-insurance-valuation/.

[12]   Society of Actuaries, *2008 Valuation Basic Tables [VBT] Report* (June 16, 2009), https://www.soa.org/experience-studies/2005-2009/2008-vbt-report-tables/.

[13]   Society of Actuaries, *2015 Valuation Basic Report and Tables* (Sept. 13, 2018), https://www.soa.org/experience-studies/2015/2015-valuation-basic-tables/.

[14]   Tim Rozar, Catie Muccigrosso, Susan Willeat, RGA, *Report on the Survey of Older Age Mortality and Other Assumptions* (May 2013), https://www.rgare.com/docs/default-source/default-document-library/older-age-mortality.pdf?sfvrsn=dc9ad888_0.

that also showed that select rates of mortality improved significantly since 2001.[15]

48. These mortality improvements since issuance of the Subject Policies represent a substantial financial benefit to State Farm in the form of decreased costs of providing insurance.

49. State Farm was contractually required to share this financial benefit with holders of the Subject Policies through decreased COI charges on the Subject Policies, but failed to do so.

50. At a minimum, State Farm abused its contractual discretion by failing to do so. Indeed, the Subject Policies provide: "[The COI] can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates." State Farm is therefore vested with contractual discretion to adjust COI based on "changes in mortality." It abused its contractual discretion by failing to adjust its COI in response to mortality improvements.

D.    **State Farm Fraudulently Concealed its Wrongdoing**

51. State Farm's intentional use of improper factors and failure to properly account for mortality improvements in calculating the COI amounted to actual fraud.

---

[15]    Allen M. Klein, Michelle L. Krysiak, Milliman, *Select Period Mortality Survey* (March 2014), available at https://www.soa.org/research-reports/2014/research-2014-select-period/.

Because State Farm did not disclose its mortality expectations or the monthly COI Rates it used to calculate the COI charges, Plaintiff and the Class could not have discovered State Farm's breach of the Subject Policies until recently.

52. State Farm communicated regular account statements and/or annual notices falsely setting forth the amount of COI charged or otherwise required to maintain the policy. State Farm communicated the amounts of the COI, which were based on impermissible factors and failed to account for improving mortality, even though it knew that under the Subject Policies that COI Rates are only "based on the Insured's age on the policy anniversary, sex, and applicable rate class."

53. For example, on or about February 9, 2016, State Farm transmitted to the Plaintiff an annual notice that claimed that the COI had been $5,031.57 over the course of the preceding contract year. State Farm made this claim even though it knew that it was basing the COI on improper factors and failing to account for improved mortality expectations. State Farm communicated similar account statements and/or annual notices on a regular basis, both before and after the annual notice referenced above.

54. State Farm knew or should have known that its representations were false. State Farm drafted the contract and is aware of its limitations on what factors could be included in the COI. State Farm intended for Plaintiff and the Class to rely upon

its misrepresentations as to the true COI. In this way, State Farm would receive the benefit of receiving inflated COI charges from Plaintiff and the Class, or, alternatively, forcing those insureds who might be most likely to cause State Farm to pay a death benefit to have their policies lapse.

55. Plaintiff and the Class reasonably relied upon State Farm's communications which identified the COI that State Farm was charging them. That COI charges rose as an insured ages, and that it might be more expensive to maintain a life insurance policy as an insured ages, would not put Plaintiff and the Class (nor any other reasonably prudent person) on notice that State Farm was intentionally and fraudulently breaching the contract. No reasonable insured would think that State Farm, as a large company in a regulated field, would send out communications stating that it were entitled to amounts which violated the policy it wrote. Plaintiff and the Class sustained damage – including in the form of inflated COI charges and ultimately higher premium payments – as a proximate result of State Farm's misrepresentations.

56. Moreover, the nature of State Farm's actual fraud is such that Plaintiff and each member of the Class would be, and Plaintiff indeed was, unaware that State Farm was engaging in wrongdoing by taking inflated charges and improper amounts from Cash Values and failing to reduce COI rates in light of the substantial

improvements in mortality rates. Plaintiff and the Class were automatically assessed inflated COI charges, but they were not privy to the back-end calculations that caused these charges to be inflated. State Farm possesses the actuarial information and equations underlying the computation of rates and charges for the Subject Policies. The COI Rates actually used to calculate the COI charges are not disclosed to policy owners, nor are the components or factors that comprise those rates. Even if they were, Plaintiff and the Class would lack the knowledge, experience, and training to reasonably ascertain how State Farm calculated the rates and charges.

57. State Farm was aware of its non-disclosure because of its superior knowledge of the aforementioned computations. As the only party with access to the actuarial information and equations for computing COI Rate, State Farm intentionally and successfully concealed the information that led to this cause of action.

58. As set forth above, State Farm fraudulently concealed the information by communicating regular account statements and/or annual statements setting forth the amount of COI charged or otherwise required to maintain the policy, but without disclosing that it was basing the COI Rates on improper factors and failing to account for improved mortality expectations. State Farm communicated the amounts of the COI even though it knew that the Subject Policies required COI Rates to be "based

on the Insured's age on the policy anniversary, sex, and applicable rate class."

59. Plaintiff exercised reasonable care and diligence with regard her Policy. Plaintiff had no reason to believe State Farm was not computing the COI Rate as it said it would in the information it provided to Plaintiff and the Class. Indeed, Plaintiff reasonably relied upon the periodic account statements State Farm sent to Plaintiff as true indicators of the cost of insurance necessary to maintain the policy. Concealment of its conduct and failure to disclose its conduct to Plaintiff and the Class constitutes fraudulent concealment and therefore tolls the statute of limitations for Plaintiff and the Class.

60. Plaintiff did not learn of State Farm's breaches supporting Plaintiff's claims until approximately Fall 2020. Plaintiff was not at fault for failing to discover the breaches and had no actual or presumptive knowledge of the breaches.

61. Plaintiff did not learn that State Farm was breaching the Subject Policies because the facts showing breach were not reasonably discoverable by Plaintiff nor was the harm that was caused by State Farm's breaches.

## **CLASS ACTION ALLEGATIONS**

62. This action is brought by Plaintiff individually and on behalf of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

63. The Class is defined as follows:

All persons who own or owned a universal life insurance policy issued by State Farm Life Insurance Company on FORM-94030 in the State of Georgia.

64. Excluded from the Class is State Farm, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

65. *Numerosity.* The Class consists of hundreds or thousands of consumers of life insurance and is thus so numerous that joinder of all members is impracticable.

66. *Ascertainability.* The identities and addresses of all members of the Class can be readily ascertained from State Farm's business records.

67. *Typicality.* The claims asserted by Plaintiff are typical of the claims of members of the Class inasmuch as State Farm breached its contracts with Plaintiff and with members of the Class in the same manner: by considering extra-contractual factors when determining the COI charges and by failing to reduce the COI Rates to reflect falling mortality rates.

68. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the members of the Class and do not have any interests antagonistic to those of the other members of the Class. In addition, Plaintiff has retained attorneys who are knowledgeable and experienced in class and complex litigation.

69. *Commonality and Predominance.* Common questions of law and fact

affecting members of the Class predominate over any individualized issues. These predominating common questions include the following:

a.      Whether State Farm is permitted by the Subject Policies to use factors other than those disclosed in the Subject Policies to determine the COI Rates used to calculate the policy deductions;

b.      Whether State Farm used, added, or included factors not specified in the Subject Policies when determining the COI Rates used to calculate the COI charges or deductions;

c.      Whether State Farm added or included factors unrelated to its mortality expectations in setting and determining rates that the Subject Policies provide are "based on" specified mortality factors and no other disclosed factors;

d.      Whether State Farm's expectations as to future mortality experience have improved;

e.      Whether State Farm was required to decrease the COI Rates it imposed on Plaintiff and members of the Class in light of improved mortality;

f.      Whether State Farm breached the terms of the Subject Policies and/or abused its discretion under the Subject Policies;

g.    Whether State Farm knowingly concealed its breaches of the terms of the Subject Policies from the Plaintiff and members of the Class;

h.    Whether Plaintiff and members of the Class sustained damages as a result of State Farm's breaches of the Subject Policies;

i.    Whether Plaintiff and members of the Class are entitled to damages, restitution, and/or other relief as a remedy for State Farm's breaches of the Subject Policies; and

j.    Whether Plaintiff and members of the Class are entitled to declaratory relief stating the proper construction and/or interpretation of the Subject Policies.

70. ***Superiority.*** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.    The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

      b.      This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

      c.      Without a class action, many class members would continue to suffer injury, and State Farm's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

71. ***Manageability.*** This action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT

72. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 71 above of this Complaint as if fully set forth herein.

73. This claim is brought on behalf of Plaintiff and the Class.

74. The Subject Policies are binding and enforceable contracts.

75. State Farm breached its contracts with Plaintiff and the Class by (a) basing its COI charges on non-permissible considerations, such as profit and/or lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates.

76. By so doing, State Farm knowingly caused the COI charges to be higher

than what is explicitly authorized by the Subject Policies.

77. Plaintiff and the Class have performed all of their obligations under the policies, except to the extent that their obligations have been excused by State Farm's conduct as set forth herein.

78. As a direct and proximate cause of State Farm's material breaches of the policies, Plaintiff and the Class have been—and will continue to be—damaged as alleged herein in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF:
## BREACH OF THE CONVENANT OF GOOD FAITH & FAIR DEALING

79. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 71 above of this Complaint as if fully set forth herein.

80. This claim is brought on behalf of Plaintiff and the Class.

81. The Subject Policies are binding and enforceable contracts.

82. Each of the contracts include an implied covenant that State Farm will act in good faith and deal fairly with Plaintiff, and that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

83. State Farm breached the implied covenant of good faith and fair dealing with Plaintiff and the Class by not reducing its COI charges in light of the well-established decreased mortality rates. As a consequence thereof, Plaintiff and the

Class suffered financial losses and were therefore injured.

84. State Farm's decision to not reduce its COI charges in light of the well-established decreased mortality rates also frustrated the purposes of the COI charge clauses of Subject Policies, which was to reimburse State Farm for its actual mortality risk.

85. As a direct and proximate cause of these breaches of the implied covenant of good faith and fair dealing and of State Farm's frustration of the purposes of the COI charge clauses of the Subject Policies, Plaintiff and the Class have been damaged as alleged herein in an amount to be proven at trial.

<u>**THIRD CLAIM FOR RELIEF:**</u>
<u>**CONVERSION**</u>

86. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 71 above of this Complaint as if fully set forth herein.

87. This claim is brought on behalf of Plaintiff and the Class.

88. Plaintiff and the Class had a property interest in the funds State Farm unlawfully deducted from their Cash Values in excess of the amounts permitted by the terms of the Subject Policies.

89. By deducting COI Charges and Expense Charges in unauthorized amounts from the Cash Values of Plaintiff and the Class, State Farm misappropriated or misapplied specific funds placed in the custody of State Farm for the benefit of

Plaintiff and the Class for use consistent with the terms of the Subject Policies, without authorization or consent, and diverted those funds for its own use. As set forth above in Paragraphs 51-59, State Farm acted with fraudulent intent by communicating to Plaintiff and the Class in the Subject Policies that COI Rates are "based on the Insured's age on the policy anniversary, sex, and applicable rate class," and by communicating regular account statements and/or account notices setting forth the amount of COI required to maintain the policy, but without disclosing that it was basing the COI Rates on improper factors and failing to account for improved mortality expectations.

90. As a direct and proximate result of State Farm's conduct, Plaintiff and the Class have been damaged.

91. Although requiring expert testimony, the amounts of unauthorized COI Charges and Expense Charges State Farm took from Plaintiff and the Class are capable of determination, to an identified sum, by comparing Plaintiff's actual COI Charge each month to a COI Charge computed using a Monthly COI Rate determined using the mortality factors disclosed in the Subject Policies.

92. On behalf of herself and the Class, Plaintiff seeks all damages and consequential damages proximately caused by State Farm's conduct.

93. State Farm specifically intended to cause damage to the Plaintiff and the

Class by deducting more than it was authorized to deduct from their Cash Values. Its conduct was, therefore, malicious and fraudulent intent. State Farm is also guilty of oppression in that its systematic acts of conversion subject Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the Class are therefore entitled to punitive or exemplary damages in an amount without limitation.

## FOURTH CLAIM FOR RELIEF:
## FRAUD

94. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 71 above of this Complain as fully set forth herein.

95. This claim is brought on behalf of Plaintiff and the Class.

96.  After the issuance of the Policy, State Farm regularly sent out account statements and other account notices to Plaintiff and members of the Class setting forth COI charges that were higher than what was allowed under the Policy. These communications did not disclose that State Farm (1) charged a COI at rates higher than allowed under the Policy, (2) used improper, non-mortality factors to inflate the COI, and (3) failed to adjust its COI Rates in light of improving mortality expectations. The same formulae to compute the fraudulent COI charges were used uniformly on Plaintiff and all members of the Class.

97. State Farm's misrepresentations and omissions were intentional. State Farm communicated the false and inflated amounts of the COI, which were based on impermissible, non-mortality factors and which failed to account for improving mortality, even though it knew that under the Subject Policies that COI are only "based on the Insured's age on the policy anniversary, sex, and applicable rate class."

98. For example, on or about February 9, 2016, State Farm transmitted to the Plaintiff an annual notice that claimed that the COI had been $5,031.57 over the course of the preceding contract year. State Farm made this claim even though it knew that it was basing the COI on improper factors and failing to account for improved mortality expectations. State Farm communicated similar account statements and/or annual notices on a regular basis to Plaintiff and the Class, both before and after the annual notice referenced above.

99. State Farm knew that its representations were false. State Farm drafted the contract and has been at all times aware of what factors could and could not be included in the COI. State Farm intended for Plaintiff and the Class to rely upon its misrepresentations as to the true COI. In this way, State Farm would receive the benefit of charging Plaintiff and the Class inflated COI charges, or, alternatively, forcing those insureds who might be most likely to cause State Farm to pay a death

benefit to have their policies lapse. State Farm made its fraudulent representations with the intent to harm Plaintiff and the Class.

100.     Each of the statements State Farm made regarding the COI were material. The statements were part of a fraud perpetrated by the State Farm in order to unlawfully obtain premiums, which state Farm did in fact receive from Plaintiff and the Class.

101.     Plaintiff and the Class reasonably relied upon State Farm's communications that identified the COI that State Farm was charging them. Plaintiff and the Class were entitled to rely on the representations of State Farm in order to keep their policies in full force and effect. That COI rose as an insured ages, and that it might be more expensive to maintain a life insurance policy as an insured ages, would not put Plaintiff and the Class (nor any other reasonably prudent person) on notice that State Farm was intentionally and fraudulently breaching the terms of the Subject Policies. No reasonable insured would think that State Farm, as a large company in a regulated field, would send out communications stating that it was entitled to deduct COI amounts that violated the policy it wrote. Plaintiff and the Class sustained damage – including in the form of inflated COI charges – as a proximate result of State Farm's misrepresentations.

102.     Plaintiff and the Class were unaware that State Farm was engaging

in the wrongdoing alleged herein. Plaintiff and the Class not privy to the back-end calculations that caused these inflated COI charges. State Farm possesses the actuarial information and equations underlying the computation of COI for the Subject Policies. The COI Rates actually used to calculate the COI charges are not disclosed to policy owners, nor are the components or factors that comprise those rates. Even if they were, Plaintiff and the Class would lack the knowledge, experience, and training to reasonably ascertain how State Farm calculated the rates and charges.

103.   On behalf of herself and the Class, Plaintiff seeks all damages and consequential damages proximately caused by State Farm's conduct.

104.   Through the conduct described herein, State Farm specifically intended to cause damage to the Plaintiff and the Class. Its conduct was, therefore, done with malicious and fraudulent intent. State Farm is also guilty of oppression in that its systematic acts of fraud subject Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the Class are therefore entitled to punitive or exemplary damages in an amount without limitation.

## FIFTH CLAIM FOR RELIEF:
## DECLARATORY RELIEF

105.    Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 71 above of this Complaint as if fully set forth herein.

106.    This claim is brought on behalf of Plaintiff and the Class.

107.    An actual controversy has arisen and now exists between Plaintiff and the Class, on the one hand, and State Farm, on the other, concerning the respective rights and duties of the parties under the Subject Policies.

108.    Plaintiff contends that State Farm has breached, and continues to breach, the Subject Policies in the following respects: by (a) basing its COI charges on non-permissible considerations, such as profit and/or lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates.

109.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Subject Policies and requests the Court to declare the aforementioned conduct of State Farm as unlawful and in material breach of the Subject Policies.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

A.  Certifying this action for class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.  Awarding Plaintiff and the Class compensatory and consequential

damages in an amount to be proven at trial;

C.   Awarding Plaintiff and the Class pre-judgment and post-judgment interest, as well as attorneys' fees and costs, at the maximum rate allowed by law;

D.   Issuing a declaration that State Farm's ongoing conduct asserted herein is in material breach of the Subject Policies;

E.   Imposing punitive damages against State Farm in an amount without limitation so as to punish, penalize, and deter such activity alleged herein from occurring in the future; and

F.   Awarding Plaintiff and the Class such other relief as this Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff and the Class hereby demand a trial by jury as to all issues so triable.

Dated: January 29, 2021

Respectfully submitted,

*/s/Roy E. Barnes*
Roy E. Barnes
Ga. Bar. No. 039000
J. Cameron Tribble
Ga. Bar No. 754759
**BARNES LAW GROUP, LLC**
31 Atlanta Street

Marietta, Georgia 30060
Telephone: (770) 227-6375
Facsimile: (770) 227-6373
Email: roy@barneslawgroup.com
ctribble@barneslawgroup.com

–and–

HAUSFELD LLP
James J. Pizzirusso**
Primary Email: jpizzirusso@hausfeld.com
Nathaniel C. Giddings**
Primary Email: ngiddings@hausfeld.com
Melinda R. Coolidge**
Primary Email: mcoolidge@hausfeld.com
1700 K Street, NW
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202)540-7201

Kimberly Fetsick**
Primary Email: kfetsick@hausfeld.com
33 Whitehall Street
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322

–and–

KALIEL PLLC
Sophia Goren Gold**
Primary Email: sgold@kalielpllc.com
1875 Connecticut Avenue NW, 10th  Floor
Washington, DC 20009
Telephone: (202) 350-4783

---

**Pro hac vice to be filed*

Facsimile: (202) 871-8180

–and–

THE VAN WINKLE LAW FIRM
David M. Wilkerson
Primary Email:dwilkerson@vwlawfirm.com
11 N. Market Street
Asheville, NC 28801
Telephone: 828-258-2991
Facsimile: 828-527-2767

–and–

MITCHELL DeCLERK
Larry D. Lahman**
Primary Email: larry.lahman@sbcglobal.net
Roger L. Ediger**
Primary Email: rle@mdpllc.com
202 West Broadway Avenue
Enid, Oklahoma 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890

*Attorneys for Plaintiff and the Putative Class*